**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | (Chapter 11) |
| | § | |
| DINASTIA, L.P., | § | Case No.  05-33650 |
| DINASTIA INTERNATIONAL CORP., | § | Case No.  05-33651 |
| DINAMEX, INC., and | § | Case No.  05-33652 |
| PATAL INVESTMENTS, L.P. | § | Case No.  05-33653 |
| | § | |
| Debtors. | § | Jointly Administered under |
| | § | Case No. 05-33650-H5-11 |
| | § | |
| | § | |
| ENTERASYS NETWORKS, INC. | § | Adversary No. 05-03517 |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| MEXMAL MAYORISTA, S.A. de C.V., | § | |
| INTERNATIONAL BANCSHARES | § | |
| CORPORATION D/B/A IBC, PATRICK | § | |
| WONG, ALFREDO FLORES, | § | |
| GULFSTAR GROUP G.P., L.L.C., | § | |
| INTERNATIONAL FINANCE | § | |
| CORPORATION D/B/A IFC, MEXMAL | § | |
| GROUP, LTD. D/B/A GRUPO MEXMAL, | § | |
| AND MEXMAL GROUP | § | |
| MANAGEMENT L.L.C., | § | |
| Defendants. | § | |

**REPLY TO ENTERASYS NETWORKS' RESPONSE TO INTERNATIONAL FINANCE
CORPORATION'S MOTION TO DISMISS AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

NOW COMES International Finance Corporation ("IFC") and, without waiving its rights,

privileges, and immunities under its Articles of Agreement, the International Finance

Corporation Act (22 U.S.C. § 282 *et seq.*), and the International Organization Immunities Act

(22 U.S.C. § 288 *et seq.*), files this Reply to Enterasys Networks' Response to International

Finance Corporation's Motion to Dismiss the Amended Complaint filed by Enterasys Networks, Inc. (the "Response") and would respectfully show the Court as follows:

1.    In its Response, Enterasys Networks, Inc. ("Enterasys") has conceded that its claim against IFC for violation of the Texas Uniform Fraudulent Transfers Act ("TUFTA") should be dismissed.  Therefore, only two causes of action remain against IFC:  (1) Count V - civil <u>conspiracy</u> to violate TUFTA; and (2) Count VII - <u>inducement</u> of Mexmal Mayorista's officers to breach alleged fiduciary duties.

2.    The grounds IFC has asserted in support of the Motion to Dismiss fall into two main categories:  (1) whether this Court has <u>subject matter jurisdiction</u> over Enterasys' claims and (2) whether Enterasys has <u>stated a claim</u> on which relief can be granted.  This second category focuses, in part, on Enterasys' standing to sue.

### SUBJECT MATTER JURISDICTION - IMMUNITY

3.    Enterasys does not dispute that IFC is an "international organization" within the meaning of the International Organizations Immunities Act ("IOIA"), or that IFC enjoys absolute immunity from suit unless it expressly waives that immunity.  *See* IFC Motion at 10, 16-17, *and* Enterasys Resp. at 5-6.  Enterasys argues only that IFC has waived its immunity.  *Id.* at 6-12. Enterasys is wrong on this point, and its claims against IFC must be dismissed.

4.    The Court has subject matter jurisdiction over the claims asserted against IFC only if IFC has "***expressly*** waive[d]" its immunity "**for the purpose of [these] proceedings or by the terms of [a] contract.**"  22 U.S.C. § 288a(b) (emphasis added).  No such waiver has occurred.  IFC has not waived its immunity for purposes of this proceeding (and Enterasys does not suggest otherwise).  Nor has IFC waived its immunity in any contract between IFC and Enterasys because there is no such contract.

5.      It is the Plaintiffs' burden to prove subject matter jurisdiction.[1] To carry that burden, Enterasys treats IFC's Articles of Agreement as a "contract" in which a waiver of immunity purportedly can be found.  Relying upon *Lutcher S.A. Celulose e Papel v. Inter-American Dev. Bank*, 382 F.2d 454, 457 (D.C. Cir. 1967), Enterasys argues that "Section 3, Article VII [sic] of IFC's Articles of Agreement waives IFC's immunity under the IOIA." Enterasys Resp. at 6.  There is no merit to this argument.

6.      IFC's Articles provide, in relevant part, as follows:

> Actions may be brought against the Corporation [IFC] only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.

Articles of Agreement, Art. VI, § 3.  As Enterasys concedes, this is a "venue provision." Enterasys Resp. at 7.  It does not constitute a broad, express waiver of immunity, either on its face, or by virtue of the reference to this provision in the Executive Order[2] that designated IFC as an international organization for purposes of the IOIA.  *See* Enterasys Resp.  at 6-8.  To hold that this venue provision is a waiver would nullify the intended effect of the Executive Order in extending the protections of the IOIA to IFC.  It would render superfluous language found elsewhere in IFC's Articles of Agreement.  For example, Article VI, § 11 gives IFC the "discretion" to "waive any of the privileges and immunities" that it enjoys under its Articles.  If

---

[1] *See Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *Mortensen v. First Federal Savings & Loan Ass'n.*, 549 F.2d 884 (3d Cir.1977).  A review of the Court's subject matter jurisdiction under Rule 12(b)(1) is significantly different than a review under either Rule 12(b)(6).  In a Rule 12(b)(1) motion there is no presumptive truthfulness attached to the Plaintiffs' allegations. *See Mortensen*, 549 F.2d at 891.  Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) motion need not be limited; conflicting written and oral evidence may be considered and a court may decide for itself the factual issues which determine jurisdiction.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212, (1981)).

[2] The acknowledgement in the Executive Order that IFC's Articles of Agreement contain a venue provision does not, in any way, change the required analysis of the extent, if any, to which IFC might or might not be found to have made a limited waiver of immunity in a particular case under the corresponding benefits test set forth in *Mendaro* discussed below.

such a waiver had already been accomplished by way of Article VI, § 3, as Enterasys suggests, Article VI, § 11 would be largely meaningless.

7.      Enterasys' *Lutcher*-based waiver argument is similar to arguments made and rejected by the court in *Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983).[3]  The *Mendaro* court, which found the *Lutcher* analysis unpersuasive and adopted the "corresponding benefit" test[4] to determine the extent to which judicial process clauses result in a waiver of immunity, expressly rejected such a broad reading of Article VII, Section 3 of the World Bank's Articles of Agreement (whose language is identical to that in IFC's Article VI, Section 3) reasoning as follows:

> *Lutcher* does not require us to interpret Article VII section 3 in a manner that would expose the Bank to potentially crippling litigation but not appreciably advance the Bank's ability to perform its functions.

*Id.* at 620

8.      *Lutcher* is distinguishable for another reason.  The plaintiff in *Lutcher* had a direct contractual relationship with the defendant international lending organization -- it was a borrower under loan agreements with the Inter-American Development Bank ("IDB").  The plaintiff in *Lutcher* sued for breach of contract, alleging that the IDB had violated implied provisions of its loan agreement by making subsequent loans to the debtor's competitor.  *Lutcher*,

---

[3] Enterasys dismisses *Mendaro* by saying that "the D.C. Circuit's decisions are not binding upon this Court." Enterasys Resp. at 8.  While true, this observation is difficult to square with Enterasys' central reliance upon the D.C. Circuit's decision (21 years earlier) in *Lutcher*.

[4] Contrary to what Enterasys apparently believes, the corresponding benefit test is not something that a court applies after concluding that immunity has been waived.  *See* Enterasys Resp. at 10.  It is part and parcel of the waiver determination: unless the international organization's objectives would be furthered by waiving its immunity in a given context, the venue provision's language cannot be construed as accomplishing a waiver.  And, contrary to what Enterasys suggests, IFC would not realize benefits "by answering lawsuits such as Enterasys'," on the theory that doing so would "maintain the relationships with its debtors and creditors," or "foster[] trust between IFC and those with which IFC seeks to do business."  *Id.* at 11.  Enterasys is neither a debtor nor a creditor of IFC, IFC has not sought to do business with Enterasys, and the objectives that Enterasys points to are objectives that IFC "can well pursue on its own without help from private litigants."  *Atlantic Tele-Network*, 251 F. Supp. 2d 126, 132 (D.D.C. 2003).  Finally, Enterasys cannot point to "public policy" to establish a waiver of IFC's immunity from suit. *See* Enterasys Resp. at 11.  Even if the purported "public policy" concerns were grounded in fact and were otherwise supportable (and they are not), "public policy" cannot constitute an "express" waiver by IFC.

383 F.2d at 455.  In that context, the court interpreted a provision similar to Article VI, § 3 as constituting only a limited waiver of IDB's absolute immunity.

9.      The present context is drastically different.  Enterasys is not an IFC borrower. Therefore, Enterasys can find no support in *Lutcher*.  At most, after *Mendaro*, the *Lutcher* case would support an argument that IFC has waived immunity only "for the suits permitted," *Id.* at 457, and that the "suits permitted" are those in which IFC would receive a corresponding benefit for such a waiver, for example when a plaintiff has a loan agreement with IFC. [5]  This is not such a suit.

10.     Enterasys next attempts to meet its burden of establishing subject matter jurisdiction by relying on *Bro Tech Corp. v. European Bank for Reconstr. and Dev.*, No. 00-2169, 2000 WL 1751094 (E.D. Pa. 2000).  In *Bro Tech Corp.*, the European Bank for Reconstruction and Development (the "EBRD") was approached by two related, subsidiary companies to finance efforts to establish a manufacturing company in Romania.  *Id.* at *1.  The EBRD insisted on a change in form of the borrower company and the plaintiffs were induced to invest in the venture as shareholders in the borrower.  After recognizing the very limited circumstances in which an international organization waives immunity, the District Court

---

[5]  As noted herein, and in IFC's Motion to Dismiss, in cases where the plaintiff lacks privity (*i.e.*, is neither a borrower, investor/bondholder or direct creditor of an international financial organization), the inclusion of a judicial process clauses in Articles of Agreement has not been held to operate as a waiver of immunity. *See Atlantic Tele-Network Inc., infra; Atkinson, infra*; and, *Mendaro, supra*.  Conversely, the reported cases have found a limited waiver of immunity only in situations in which the plaintiff is borrower or someone the IFC/IDB dealt with directly and induced to participate in the transaction.  *See Lutcher, supra* (plaintiff, a borrower, was in privity with the lender); *Bro Tech Corp., infra* (lender induced investors to participate in the transaction); *In re Kaiser Group Int'l Inc.,* 399 F.3d 558 (3d Cir. 2005) (lender was party to a construction contract with and filed claims against the debtor and was subject to counterclaims).  Indeed, this very practical notion that waiver only applies where there is contractual privity is the basis of the "corresponding benefit" test. To wit:

> A waiver of immunity with respect to [parties to] the World Bank's commercial transactions with the outside world is also evident under Article VII section 3.  If this immunity were not waived the Bank would be unable to purchase office equipment or supplies on anything other than a cash basis.  Even the normal use of telephone and utilities might be placed on other than usual commercial terms.  Such a restriction would unreasonably hobble its ability to perform the ordinary activities of a financial institution operating in the commercial marketplace.  *Mendaro,* 717 F.2d at 617

determined that the investors could sue the EBRD because it would receive a corresponding benefit for allowing such suit. *Id.* at *4. The court stated that:

> If the EBRD could induce participation in any venture, and then act with impropriety towards the <u>investors</u> without any repercussions, then it is unlikely that any commercial establishment would wish to interact with them. Instead, it is clear that the EBRD must waive immunity to some extent for transactions <u>such as the one sub judice</u>.

*Id.* (emphasis added)[6]  This language demonstrates that the determination of the scope of a purported limited waiver focuses on a particular claim by a particular plaintiff with whom the IFC dealt. *See id.*

11.    Again, the present context is drastically different.  IFC did not induce Enterasys to invest as a shareholder in Mexmal Mayorista.  In fact, IFC never dealt with Enterasys, and the underlying transaction on which Enterasys' claim is based was completed prior to IFC's making of the loan to Mexmal Mayorista.  Therefore, Enterasys can find no support in *Bro Tech Corp.*

12.    That Enterasys' waiver arguments under *Lutcher* and *Bro Tech Corp.* are unavailing has been expressly clarified in a recent, directly analogous case.  In *Atlantic Tele-Network, Inc. v. Inter-American Dev. Bank*, the court dismissed a complaint that was filed by a company that was not a borrower and did not otherwise have a contractual relationship with IDB, rejecting an argument that is identical to Enterasys' argument here:

> While some older decisions may have intimated a broader scope to the waiver of immunity represented by Section 3 of Article XI, … the D.C. Circuit has most recently adopted an interpretation of the Section 3 waiver effectively narrowing its scope to a minimum.  In *Atkinson*, the D.C. Circuit held that "the Bank's immunity should be construed as *not waived* <u>unless the particular type of suit would *further* the Bank's objectives</u>."

---

[6] When citing the above quoted excerpt from the *Bro Tech Corp.* opinion, Enterasys deemed it appropriate to remove from the middle of the quote, through use of an ellipsis, the final sentence quoted above.

> As the IDB points out, were this suit to be allowed, <u>virtually any U.S. citizen with a commercial grievance against a debtor nation could challenge an IDB loan to that nation without any "corresponding benefit"</u> accruing thereby to the IDB…. Accordingly, the Court holds that the IDB has not waived its immunity from suits such as this, and is, therefore, immune to this action.

251 F. Supp. 2d 126, 132 (D.D.C. 2003) (quoting *Atkinson v. Inter-American Dev. Bank*, 156 F.3d 1335, 1338 (D.C. Cir. 1998) (original emphasis, citations omitted) (emphasis added).

13.    The same reasoning applies here.  Even if the venue provision in IFC's Articles of Agreement were viewed as a waiver of immunity (a proposition that is difficult to square with the IOIA's requirement that waivers be "express"), the waiver would be limited in scope and would not pertain here.  Lawsuits brought by disgruntled creditors of entities to which IFC has extended loans do not further IFC's objectives as a multilateral lending institution or provide any other corresponding benefit to IFC.

14.    This case graphically illustrates the point.  According to Enterasys, to earn a "six figure" fee,[7] IFC loaned $10,000,000 to Mexmal (which it purportedly knew to be insolvent) and helped Mexmal's principals pay debts owed to Dinastia (which was also purportedly known to be insolvent) so that Mexmal's principals could benefit when Dinastia paid debts that these principals had guaranteed.  Enterasys Resp. at 11.  In fact, IFC learned to its dismay, after loaning the $10,000,000, that Mexmal and Dinastia both had substantial financial difficulties: Dinastia filed bankruptcy in the U.S., Mexmal filed bankruptcy in Mexico, and IFC has received less than 10¢ on the dollar from both cases combined.  IFC never would have loaned $10,000,000 to Mexmal if it had known that Mexmal or Dinastia was insolvent.  Enterasys' contrary argument is absurd.

---

[7] Which, the Court can take judicial notice of the Exhibits attached to IFC's allowed proof of claim on file in the underlying bankruptcy case, consisted of a front-end fee of $150,000 with certain annual fees all totaling less than $200,000.

15.     This highlights why immunity should be applied here.    IFC should not be subjected to claims that any creditor of an IFC borrower can cobble together when the borrower has financial difficulties and fails to pay its creditors.    Unless immunity is respected in this context, IFC's ordinary loan activities will be subject to after-the-fact challenge by third parties who wish that the proceeds of an IFC loan had been used differently, or that the IFC borrower had behaved differently towards its creditors.    To paraphrase the court in *Atlantic Tele-Network*, IFC would become subject to suit by "virtually any[one] with a commercial grievance" against an IFC borrower.    *See* 251 F. Supp. 2d at 132.    That outcome would contravene the very purpose of the IOIA.

16.     The immunities afforded to organizations such as IFC are critical "to the growing efforts to achieve coordinated international action through multinational organizations with specific missions."    *Mendaro v. World Bank*, 717 F.2d at 615.    The immunities must be given their full force and effect unless a plaintiff can show an express waiver.    No such express waiver has been shown here.    Based on the resultant lack of subject matter jurisdiction, the claims against IFC should be dismissed with prejudice.

## FAILURE TO STATE A CLAIM - STANDING

17.     Enterasys's claim against IFC for civil conspiracy to violate TUFTA and inducement of breach of fiduciary duty must be dismissed because Enterasys lacks standing to assert the claims as plead.

18.     In its Response, Enterasys clearly asserts that the goal of the alleged conspiracy was to cause the proceeds of the loan IFC made to Mexmal Mayorista to be transferred ultimately to the creditors of Dinastia L.P., including IBC, whose claim was guaranteed by the principals of Mexmal and Dinastia:

> Enterasys alleges that IFC participated in the scheme to defraud Mexmal's outside creditors by pre-approving the fraudulent transfers to Dinastia and then to Dinastia's creditors, including IBC.

Enterasys Resp. at 9.   The inducement of breach of fiduciary duty claims against IFC rely entirely on the same facts.

19.    Inextricably imbedded in Enterasys' conspiracy and inducement of breach of fiduciary duty allegations is a complaint about how Dinastia, at the direction of Messrs. Wong and Flores, paid certain of its creditors at a time when Dinastia was allegedly insolvent.  As explained in the Motion to Dismiss, these causes of action are owned by the Dinastia bankruptcy estate not Enterasys.

20.    The question of claim ownership and standing has been raised in earlier hearings in this case and Enterasys was given an opportunity to file an amended complaint that did not assert claims violating the stay or belonging to the estate.  As Enterasys' Response now describes the causes of action contained in its Amended Complaint, Enterasys is, indeed, still asserting Dinastia's causes of action.  Because the causes of action which belong to Dinastia's bankruptcy estate are integral to the conspiracy and inducement of breach of fiduciary duty claims in the Amended Complaint, Enterasys Amended Complaint should be dismissed for lack of standing.

### FAILURE TO STATE A CLAIM – STATUTE OF REPOSE

21.    Further, Enterasys alleges that IFC violated section 24.006(b) of TUFTA as the sole basis for its claim against IFC for civil conspiracy.  This cause of action no longer exists having been extinguished by operation of section 24.010(a)(3) of TUFTA.

22.    The Amended Complaint alleges that: (1) IFC and Mexmal executed the financing agreement on June 27, 2003, (2) IFC funded the $10,000,000.00 loan to Mexmal, (3) which, thereafter, disbursed approximately $8,000,000.00 of the loan proceeds to Dinastia, (4)

which, in turn, paid $2,900,000.00 to IBC on Dinastia's line of credit and disbursed the remaining $5,000,000.00 of proceeds to Dinastia's other creditors. Amended Complaint ¶ 39.

23.    The Texas Uniform Fraudulent Transfer Act provides:

§ 24.010. EXTINGUISHMENT OF CAUSE OF ACTION.

(a) … a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
                    . . .
        (3)  under Section 24.006(b) of this code, within one year after the transfer was made.

24.    On May 13, 2005, Enterasys first filed its claims against IFC (later removed to this Court) in the State District Court, well in excess of one year after the transfer to Dinastia occurred, thus well past the time when this claim was extinguished.

25.    Rather than a mere statute of limitations, section 24.010(b)(3) is a statute of repose, which means that Enterasys' claims based on 24.006(b) are "extinguished" and forever barred if not brought within one year after the alleged fraudulent transfer was made.  In, *United States v. McLendon*, the court explained that "after considering the plain language of the statute and its legislative history … [§24.010(a)(3) is] a statute of repose, which bars the right [to bring a claim under 24.006(b)] itself, rather than a statute of limitations, which bars only the exercise of the right."  No. 3:97-CV-0613-G, 1999 U.S. Dist. LEXIS 12796, at *13 (N.D. Tex. July 28, 1999).  The Supreme Court of Texas has described a statute of repose as one that "runs from a specified date without regard to accrual of any cause of action," *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex. 1994), or one that "cuts off a right of action before it accrues." *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 645 n.1 (Tex. 1989).

26.    Because the Amended Complaint demonstrates that the transfer occurred more than one year before Enterasys filed this action, section 24.010(a)(3) extinguishes Enterasys'

civil conspiracy claim against IFC.  Therefore, the civil conspiracy claim should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, IFC respectfully requests that Enterasys' claims against it be dismissed with prejudice and for all other and further relief to which IFC may be entitled, either at law or in equity.

Dated:  March 10, 2006,
         Houston, Texas.

         Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

 _/s/  Zack A. Clement_
Zack A. Clement
State Bar No. 04361550
R. Andrew Black
State Bar No. 02375110
Johnathan C. Bolton
State Bar No. 24025260
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

**ATTORNEYS FOR INTERNATIONAL
FINANCE CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all

parties listed below, via United States first-class mail, on this 10th day of March, 2006.

 /s/ R. Andrew Black
R. Andrew Black

Alex Darcy
Askounis & Borst, P.C.
303 East Wacker Drive, Suite 1000
Chicago, IL 60601

Sigifredo Perez, III
Kazen, Meurer and Perez, LLP
1619 Matamoros Street
Laredo, TX 78040

Diann M. Bartek
Cox Smith Matthews Incorporated
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205

Carlos David Castillon
Freeman & Castillon
1620 Santa Ursula, Suite 2
Laredo, Texas 78040-3864

Kyung S. Lee
Erin E. Jones
Diamond McCarthy Taylor Finley Bryant &
Lee, L.L.P.
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas 77010

David R. Jones
Porter & Hedges, L.L.P.
Reliant Energy Plaza
1000 Main Street, 36th Floor
Houston, Texas 77002

Stephen W. Lemmon
Susana Carbajal
Brown McCarroll LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701

Doug H. Edwards
Haynes & Boone, LLP
1221 McKinney, Suite 2100
Houston, Texas 77010

Baldemar Garcia, Jr.
Alejandro E. Villarreah, III
Person, Whitworth, Borchers & Morales,
L.L.P.
602 East Calton Rd.
P.O. Drawer 6668
Laredo, Texas 78042-6668

Steven Douglas Shurn
Hughes Watters and Askanase
Three Allen Center
333 Clay, 29th Floor
Houston, TX. 77002